**MOODY, Plaintiff-Appellant, v. MOODY, Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 24077. Decided May 8, 1957.

Carl W. Halberg, W. B. Heiser, for plaintiff-appellant.
Anthony C. Carlin, Michael T. Gavin, for defendant-appellee.

## OPINION

By SKEEL, PJ:

This appeal comes to this court on an entry of the trial court stating its conclusions as to the meaning of a mandate from this court entered on a former appeal. This court, in a former appeal, reversed the judgment of the Court of Common Pleas in dismissing a petition to vacate the judgment entered by that court when the case was tried on the merits. The judgment of reversal and the remanding of the case for further proceedings as it then appeared on the docket, as evidenced by the transcript, was for the reason that the judgment dismissing the

petition to vacate was "manifestly against the weight of the evidence and contrary to law."

This case is now before this court for the third time. The plaintiff husband filed a petition for divorce on September 11, 1950. Decree was entered for the plaintiff without contest on November 29, 1950 (the trial having been conducted ten days earlier), the divorce being granted on the grounds of "wilful absence for more than three years." In the bill of exceptions presenting the evidence taken on the petition to vacate the decree of divorce, the plaintiff testified in chief that he cohabited with his wife on a trip to the south in 1949. Also, the separation agreement introduced into evidence, which was dated August 25, 1950, and signed by both parties and witnessed by plaintiff's lawyer of record and his wife, states as a fact: "That whereas, the parties hereto are husband and wife and certain differences have arisen between them rendering it impossible for them to hereafter live together, and said parties have agreed upon an immediate separation and are now separated, * * *." This provision of the agreement completely negatives any claim that this defendant left the plaintiff and that she was guilty of wilful absence for three years. The testimony of the defendant, which is not controverted in the record, is that the plaintiff left the defendant. This evidence is in part as follows:

"Q. Now, along in the year 1950, you may tell us about the separation agreement which was entered into at that time.

"A. Well, Mr. Moody left me, and he moved in with the aunt, I should say with Mrs., and he was anxious to marry her when he could obtain a divorce.

"Mr. Halberg called me, and he wanted to come to my home to talk over that Mr. Moody wanted to marry this woman as soon as possible, or he could get a divorce, and Mr. Halberg first drew up the separation agreement for $400, which I did not sign, because I have worked since I left college, and I worked practically the entire part of my married life, and I did not sign."

* * *

"Q. How long before this time (referring to signing the separation agreement), had Mr. Moody left you?

"A. I don't know the exact time, but he moved in with his lady friend's aunt, and he had possibly been living there something like a year."

* * *

"Q. Then he pulled out the bankbooks?

"A. He said, 'You are sick, you are not able to work,' and he said, 'You expect me to feed you,' and he walked out the door, and he had been keeping company with this lady friend.

"Q. Why you signed was to get hold of some money at least to live on, is that correct?

"A. I certainly did. He took all the bankbooks, and all the cash, and walked out the door, and he has repeatedly since then tried to railroad me into State Hospital."

On cross-examination, the defendant testified:

"Q. Mrs. Moody, to be exact, isn't it about seven years ago today that you separated? (This record was taken in November of 1953.)

"A. Well, I would have to check it. It might be a little bit more or less, to be exact.

"Q. The records - -

"A. We were friendly, and we were man and wife up until the petition was served on me, and since then there has been no relationship whatsoever.

"Q. As a matter of fact, there was no relationship as man and wife - -

"A. Not after I was served with the petition for divorce.

"Q. Let me ask you. There was no relationship as man and wife since the time you separated, since Mr. Moody left your home?

"A. No. Since the time I was served with the petition. Mr. Moody and I, since he left home, we went south together, and we lived at his stepmother.

"Q. What year was that, do you recall?

"A. A few months before the divorce petition was filed. It was in the summer, it was in July, and he was then living with Mrs. Boynton, the aunt of the lady he wishes to marry."

The defendant also testified that counsel of record in the divorce action had promised to notify her when the action came up for trial so she could attend the hearing and that she was told that a separation agreement, which was drawn and signed at plaintiff's counsel's home, wherein she relied upon his advice, did not mean anything. This testimony was as follows:

"Q. What representations, if any, were made to you at that time as to the binding nature of the agreement?

"A. Mr. Halberg says, 'Go ahead and sign this. I am certain it don't mean anything, anyway. The judge will decide what was fair in settlement.' Mr. Halberg did high-pressure me, because Mr. Moody was anxious to get the divorce, and he said the woman was going to heir $75,000, and he was anxious to marry her.

"Q. You were later served with petition for divorce?

"A. We talked that over - -

"Q. I say, you were served with a petition?

"A. Yes.

"Q. For divorce?

"A. Yes.

"Q. Whom did you consult concerning this matter?

"A. I only talked with Mr. Halberg. He was representing both of us."

The plaintiff testified in the hearing on the petition to vacate (held November 16, 1953), as follows:

"Q. There was some evidence introduced - - you separated exactly seven years ago today, isn't that right?

"A. As well as I can remember.

"Q. Since the time you separated, have you at any time had any cohabitation with Mrs. Moody?

"A. Since separation, it has been probably four years that we have been together.

A year before the agreement.

"Q. A year before the agreement?

"A. Yes.

"Q. That was the last?

"A. We seen each other each week.

* * *

"Q. Did you take her on a trip down south?

"A. I did, in '49.

"Q. That was prior to the separation?

"A. That was prior to the agreement.

"Q. Mr. Moody, during the time up until the time the separation agreement was drawn up, did you pay her any money?

"A. I paid her every month.

"Q. How much did you give her?

"A. Around $100."

From the foregoing evidence (particularly when considering the testimony of the plaintiff), it seems almost incredible that a divorce could have been granted in 1950 on the ground of wilful absence for three years or that a petition to vacate such decree on the ground of fraud practiced on the court should have been overruled. The plaintiff having been given testimony at this hearing, which if true would constitute a direct challenge to the truthfulness of any evidence supporting the claim that plaintiff's wife was wilfully absent for three years before his action for divorce was filed, required the court to give immediate heed to a petition challenging the legality of the judgment. A divorce case is a matter of public concern and requires absolute veracity at every step. It was for this reason that this court reversed the judgment of the trial court dismissing the defendant's petition to vacate. The decree entered granting a divorce based on the statutory ground of wilful absence for three years for the reason that such judgment, as shown on the face of the record, was clearly against the manifest weight of the evidence and contrary to law.

On the record, there being slight conflict in the evidence on issues of fact, this court did not feel called upon to enter final judgment directing that the petition be granted and, therefore, it was the judgment of this court that the cause be remanded with instructions to retry the issues presented on the petition to vacate the decree.

On the record, the petition to vacate not yet having been disposed of, we hold that the entry here appealed from, wherein the court attempted to interpret the former order of this court without taking evidence, is not a final order. We do, however, consider this proceeding as one to clarify the entry heretofore made by this court. The petition to vacate the decree is still pending. This appeal is, therefore, dismissed and the cause remanded with instructions to try the issues presented by the petition to vacate as provided by law.

HURD and KOVACHY, JJ, concur.